NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIC H. PRAUZE, | |
| Plaintiff, | CIVIL NO. 05-5236(NLH) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

Philip Wolf, Esquire
Wolf & Brown, LLC
228 Kings Highway East
Haddonfield, NJ 08033

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Karla Joy Gwinn, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Disability Insurance Benefits and Supplemental

Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled prior to May 12, 2003. For the reasons stated below, this Court will affirm that decision.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, Eric H. Prauze, was employed as a corrections officer from April 1985 until September 21, 2001, at which time Plaintiff claims that he could no longer work, as a corrections officer or in any other position, due to his severe psoriasis and generalized anxiety disorder.  Plaintiff applied for Social Security benefits, and after a hearing before an ALJ, it was determined that Plaintiff was disabled as of May 12, 2003, but not prior to that date.  Plaintiff appealed the decision, and the Appeals Council denied Plaintiff's request for review.  Plaintiff now seeks this Court's review.

**II.   DISCUSSION**

**A.   Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must

uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has

3

held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  <u>Id</u>. (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper

4

legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

5

> 1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."
>
> 2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."
>
> 3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."
>
> 4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."
>
> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. <u>See</u> <u>id.</u> In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of

substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

The ALJ found that since Plaintiff stopped working on September 24, 2001, he had not engaged in any substantial gainful employment (Step One) and his impairments of psoriasis and generalized anxiety disorder were severe (Step Two).  The ALJ found, however, that Plaintiff's impairments did not meet the criteria in Step Three to be considered disabled, and that prior to May 12, 2003, even though he was not able to perform his past relevant work (Step Four), Plaintiff had been capable of performing other sedentary work which existed in the national economy (Step Five).

Plaintiff presents two arguments for review: (1) whether there was substantial evidence to support the Commissioner's finding that Plaintiff was not disabled prior to May 12, 2003, and (2) whether the ALJ properly relied on the Medical Vocational Guidelines.

**1.   Whether there was substantial evidence to support the Commissioner's finding that Plaintiff was not disabled prior to May 12, 2003**

The ALJ's determination that Plaintiff was disabled as of May 12, 2003, but not as of September 24, 2001, was based on considering the severity of Plaintiff's two conditions--psoriasis

7

and generalized anxiety disorder.  Plaintiff first argues that the ALJ did not properly consider the medical evidence and Plaintiff's own testimony regarding Plaintiff's psoriasis.  Plaintiff argues that the ALJ did not specifically reference a report by Dr. Rekant that Plaintiff suffers from psoriasis on seventy percent of his body.  Plaintiff also argues that the ALJ did not consider the November 1, 2001 report of Dr. Cueto, Plaintiff's treating physician, that indicates that Plaintiff had been receiving treatment for his psoriasis once a week for a month.  With regard to Plaintiff's own testimony, Plaintiff argues that the ALJ did not consider his excellent work history, stating that a "good work history should weigh favorably in assessing Plaintiff's credibility."  (Pl.'s Br. at 8.)

   Plaintiff's arguments on these issues are unpersuasive.  In his evaluation of the evidence, the ALJ recognized that Plaintiff had suffered from chronic psoriasis since 1980, and he specifically referenced Dr. Rekant's report.  (R. at 16.)  Further, even though the ALJ does not specifically mention Dr. Cueto's November 1, 2001 report, the ALJ was not required to do so in considering Plaintiff's ability to work because Dr. Cueto had not placed any limitations on Plaintiff as a result of his psoriasis.  (R. at 149-50, 166-72.)  Dr. Cueto's report indicates that Plaintiff had been treated for his psoriasis every week for a month in October 2001, but it does not support Plaintiff's

8

position that he was unable to work since September 2001.

This reasoning also applies to Plaintiff's concerns regarding the ALJ's consideration of Plaintiff's testimony. To determine whether Plaintiff was capable of performing work other than as a corrections officer since September 24, 2001, the ALJ specifically considered Plaintiff's testimony on the effect of his psoriasis on his ability to work. The ALJ specifically noted that Plaintiff had "problems with psoriasis for the last 13 years and that his psoriasis flares up at times, and improves some, but never goes away completely." (R. at 16.) The ALJ also noted that Plaintiff's "skin condition has existed since the 1980's and Mr. Prauze testified that he was able to work with it." (R. at 18.) Thus, it is clear that the ALJ considered Plaintiff's testimony on how psoriasis affected his ability to work. Furthermore, because the ALJ relied on Plaintiff's testimony in his decision, it is axiomatic that the ALJ assessed Plaintiff's credibility favorably, as Plaintiff believed his work history deserved.[1]

Plaintiff next argues that the ALJ did not properly consider the medical evidence regarding Plaintiff's generalized anxiety

---

[1] It must be noted that Plaintiff cites to no legal authority to support his position that good work history should weigh favorably in assessing a plaintiff's credibility. The Court construes this argument to challenge whether the ALJ properly considered Plaintiff's credibility in general, regardless of Plaintiff's work history.

9

disorder. Plaintiff first argues that the ALJ's interpretation of Dr. Mintzer's April 7, 2002 report to support the ALJ's conclusion that Plaintiff only had mild symptoms and was generally able to function pretty well was erroneous. Plaintiff also argues that the ALJ did not properly consider the September 27, 2002 Mental Residual Functional Capacity Assessment performed by the state.

Plaintiff's arguments on these issues are also unpersuasive. The ALJ extensively cited to Dr. Mintzer's report, stating, in part, "Dr. Lawrence Mintzner, a psychologist, reported that Mr. Prauze was seen on April 7, 2002. Mr. Prauze reported that he left his job as a corrections officer in September 2001 due to 'stress, fatigue, headaches and the aggravation of the job'; and that he felt 'burnt out.'" (R. at 16.) The ALJ specifically noted that "Dr. Mintzer's diagnoses were adjustment disorder with anxiety and depression and estimated that the claimant's Global Assessment of Functioning Score (GAF) for the year was 65, which indicates mild symptoms, but generally able to function pretty well (Exhibit 6F)." In holding that Plaintiff was not disabled based on his anxiety disorder prior to May 12, 2003, the ALJ properly interpreted Dr. Mintzer's report, which concluded that his "limitations appear to be moderate in degree." (R. at 164.)

With regard to the Mental Residual Functional Capacity Assessment performed by the state on September 27, 2002,

10

Plaintiff argues that because the report indicates several areas of "moderate limitation in understanding, concentration and memory," and "concentration was found to be 'fair,'" "[s]uch limitations are not supportive of an ability to do a full range of sedentary work."  (Pl.'s Br. at 9.)  Plaintiff, however, fails to reference other parts of the Assessment, which the ALJ notes in his decision: The Assessment indicated that the claimant was "'moderately limited' in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in the work setting; or set realistic goals or make plans independently of others."  (R. at 17.)  Even considering this report alone, and not in conjunction with the other medical evidence, substantial evidence supports the ALJ's finding that Plaintiff was able to perform sedentary work prior to May 12, 2003.

Next, Plaintiff argues that the ALJ did not properly consider the medical evidence and Plaintiff's own testimony regarding his psoriasis and generalized anxiety order in combination.  Plaintiff contends that the "ALJ commits an error of law when he fails to adequately explain why he minimizes the debilitating effect of Plaintiff's psoriasis in combination with

11

a general anxiety disorder." (Pl.'s Br. at 9.)  The ALJ did, however, explicitly consider Plaintiff's two impairments in conjunction with each other.  When considering Step Three of the analysis, the ALJ stated, "Although the claimant has impairments which are considered to be 'severe,' they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments."  (R. at 16.)  Then, in consideration of Steps Four and Five, the ALJ reviewed in detail all the medical evidence as it related to both impairments, and ultimately concluded that even though Plaintiff's psoriasis did not render him totally disabled until June 2004 (R. at 19), his generalized anxiety disorder, in conjunction with his psoriasis, rendered him disabled on May 12, 2003 (id.).  Plaintiff's contention that the ALJ did not properly consider Plaintiff's two impairments in combination is without merit.

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints of significant pain in accordance with SSR 96-7p.[2]  This argument simply repeats his

---

[2] "Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." Sullivan v. Zebley, 493 U.S. 521, 531 n.9 (1990) (internal quotations omitted). "Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified, or revoked by later legislation, regulations, court decisions or rulings." Heckler

12

arguments above concerning whether the ALJ properly considered Plaintiff's work history in determining credibility and whether the ALJ considered Plaintiff's two impairments in conjunction with one another.  Additionally, even though Plaintiff argues that the ALJ did not properly analyze the five factors of SSR 96-7p, he fails to state which factor or factors the ALJ did not address.

Allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. § 404.1529(c), and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony.  Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p.  As discussed above, the ALJ here did not reject Plaintiff's testimony--rather, the ALJ credited Plaintiff's testimony with regard to the effect of his psoriasis and anxiety on his ability to work.  Accordingly, Plaintiff's argument that the ALJ failed to properly evaluate Plaintiff's subjective complaints of significant pain must fail as well.

---

v. Edwards, 465 U.S. 870, 874 n.3 (1984) (internal quotations omitted).

### 2. Whether the ALJ properly relied on the Medical Vocational Guidelines

Plaintiff argues that at Step Five of the sequential analysis the ALJ improperly relied on the Medical Vocational Guidelines, or "the Grids,"[3] to determine that he was not disabled prior to May 12, 2003.  Plaintiff argues that because he suffers from both exertional and nonexertional impairments, psorasis and generalized anxiety disorder respectively, the ALJ is prohibited from using the Grids.  Instead, Plaintiff argues that the ALJ should have taken testimony from a vocational expert.

---

[3]The Grids "establish the types and number of jobs that exist in the national economy for claimants with exertional impairments."  <u>Sykes v. Apfel</u>, 228 F.3d 259, 263 (3d Cir. 2000) (citing 20 C.F.R. pt. 404, subpt. P, app. 2 (1999)).

> "The grids consist of a matrix of four factors-physical ability, age, education, and work experience-and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion that work exists that the claimant can perform. . . . Each of these four factors is divided into defined categories. A person's ability to perform physical tasks, for example, is categorized according to the physical exertion requirements necessary to perform varying classes of jobs-i.e., whether a claimant can perform sedentary, light, medium, heavy, or very heavy work. Each of these work categories is defined in terms of the physical demands it places on a worker, such as the weight of objects he must lift, and whether extensive movement, or use of arm and leg controls, is required."

<u>Id.</u> (citations omitted).

14

The Third Circuit has directed that the "Commissioner cannot determine that nonexertional impairments do not significantly erode occupational base under medical-vocational guidelines ("grids") without taking additional vocational evidence establishing that fact." Sykes v. Apfel, 228 F.3d 259, 261 (3d Cir. 2000). In response to Sykes, the Social Security Administration ("Agency") issued an Acquiescence Ruling to specifically address how the Agency would use the grid framework when there were nonexertional limitations issues as well as exertional issues. Allen v. Barnhart, 417 F.3d 396, 404 (3d Cir. 2005) (citing AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.)). The Agency stated that it would not use the grid framework exclusively, but would, in addition:

> (1) Take or produce vocational evidence, such as from a vocational expert, the DOT, or other similar evidence (such as a learned treatise); or
> (2) Provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational base, and allow the claimant the opportunity to respond before we deny the claim.

Id. (citing AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.)). The Agency continued, however, to explain:

> Under our interpretation of 20 CFR 404.1569a, 416.969a and section 200.00(e) of Appendix 2 to Subpart P of Part 404, and of SSR 83-14, we are not required to consult a vocational expert or other vocational resource in all instances in which we decide whether an individual who has a nonexertional limitation(s) is or is not disabled. For instance, we are not always

15

> required to consult a vocational expert or other
> vocational resource to help us determine whether a
> nonexertional limitation significantly erodes a
> claimant's occupational base when adjudicative guidance
> on the effect of the limitation is provided in an SSR.

Id. (citing AR 01-1(3), 2001 WL 65745 at *4 (S.S.A.)).

Accordingly, the Agency stated,

> This Ruling does not apply to claims where we rely on
> an SSR that includes a statement explaining how the
> particular nonexertional limitation(s) under
> consideration in the claim being adjudicated affects
> the claimant's occupational job base.  When we rely on
> such an SSR to support our finding that jobs exist in
> the national economy that the claimant can do, we will
> include a citation to the SSR in our determination or
> decision.

AR 01-1(3), 2001 WL 65745 at *3-4 (S.S.A.).

Here, in addition to considering the effect Plaintiff's exertional limitations had on his ability to work, the ALJ had to also determine the effect Plaintiff's nonexertional limitations had on his ability to work from September 24, 2001 until May 12, 2003.  With regard to Plaintiff's generalized anxiety disorder, the ALJ found, based on the medical evidence, that prior to May 12, 2003, Plaintiff's anxiety disorder did not impose any significant functional limitations.  The only limitation imposed by any of Plaintiff's doctors with regard to his anxiety disorder was the need to avoid excessive or loud noises.  To address this limitation, the ALJ referred to SSR 85-15, which provides, "Where a person has a medical restriction to avoid excessive amounts of

16

noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."  SSR-85-15, 1985 WL 56857, *8 (S.S.A.)). Based on this SSR, the ALJ concluded that until May 12, 2003, Plaintiff's only nonexertional limitation did not affect his ability to work.

Thus, because an SSR provided the ALJ with adjudicative guidance on the effect of Plaintiff's limitation, the ALJ was not required to consult a vocational expert or other vocational resource to determine whether Plaintiff's nonexertional limitation significantly eroded his occupational base. Furthermore, by essentially finding that prior to May 12, 2003, Plaintiff's anxiety disorder did not present any nonexertional limitations, the ALJ was able to use the Grids to determine the existence of occupations in the national economy that Plaintiff was capable of performing.  Indeed, the ALJ noted that the Grids "may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all . . . of the seven primary strength demands required by work at the given level of exertion . . . and there are no nonexertional limitations."  (R. at 20.) Consequently, the ALJ did not err when he relied on the Grids to determine Plaintiff's ability to perform sedentary work prior to

17

May 12, 2003.[4]

## III. CONCLUSION

For the reasons expressed above, the decision of the ALJ is affirmed. An accompanying Order will be issued.

Date: May 8, 2007                    s/ Noel L. Hillman

At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

---

[4] In an alternative argument, Plaintiff argues that the ALJ's finding that Plaintiff's nonexertional limitations did not significantly impact Plaintiff's ability to perform a full range of sedentary work is not supported by substantial evidence. To support his argument, Plaintiff contends (1) that "Plaintiff's psoriasis and general anxiety constitutes severe impairments, which in and of itself, is an indication that these impairments cause more than insignificant limitation of function, (2) "[m]oderate limitations . . . would in and of themselves each impact on Plaintiff's ability to perform a full or wide range of sedentary work," and (3) the medical evidence "clearly indicates that Plaintiff's nonexertional mental limitations and limitations from the psoriasis condition are more than insignificant limitations." (Pl.'s Br. at 6.) These conclusory statements are not supported by the record.

18